OPINION
{¶ 1} A.D., a juvenile at the time of her adjudication, appeals from an adjudication that she is a delinquent by reason of a traffic violation: failure to yield the right-of-way to an oncoming motorist. She contends that the adjudication is against the manifest weight of the evidence, that there is insufficient evidence in the record to support the adjudication, and that the trial court erred by denying her motion to dismiss, made after the State's presentation of its case-in-chief. We conclude that there is evidence in the record to support the adjudication, that this evidence was adduced during the State's case-in-chief, and that the adjudication is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} This case was heard before a magistrate, who made the following findings of fact:
 {¶ 3} "1. [A.D.] is a 17 year old female and alleged juvenile traffic offender, who is properly before the Court for allegedly failing to yield the right of way in making a left turn in violation of Section 4511.42 of the Ohio Revised Code.
 {¶ 4} "2. On July 8, 2002, at approximately 8:45 p.m., around dusk, in the County of Montgomery, State of Ohio, a motor vehicle accident occurred at the intersection of Spring Valley Road and South Main Street (Route 48).
 {¶ 5} "3. This accident occurred between Ms. [A.D.], who was operating a blue Toyota Camry heading southbound on Route 48, and was in the intersection of Spring Valley Road, intending to turn left within the intersection, and Ms. Rhonda Everett, who was operating a motorcycle, heading northbound on Route 48, and proceeding through the intersection as the light was cycling from green to amber to red.
 {¶ 6} "4. Both operators of their motor vehicles are licensed by the State of Ohio.
 {¶ 7} "5. Both motor vehicles appeared to be within the lawful use of their roadway just prior to the accident.
 {¶ 8} "6. Ms. Everett was proceeding straight through the intersection due to her light changing from green to yellow.
 {¶ 9} "7. Ms. [A.D.] was waiting to turn left as the light cycled from green to yellow.
 {¶ 10} "8. Both vehicles are within the lawful use of the intersection as light cycles yellow.
 {¶ 11} "9. The motorcyclist (Ms. Everett), was then struck by Ms. [A.D.]'s vehicle as it was turning left as the light is cycling yellow to red. Ms. [A.D.] failed to yield the right of way to oncoming traffic and collided with the motorcyclist, Ms. Everett.
 {¶ 12} "10. Several eyewitnesses, Colin Flynn, Donald Panlak [sic, should be Pawlak], and Joe Westendorf observed different parts of the accident just prior to its occurrence and thereafter.
 {¶ 13} "11. Numerous Centerville Police Officers investigated the accident after it had occurred.
 {¶ 14} "12. Ms. [A.D.] was not injured, however, Ms. Everett was seriously injured."
 {¶ 15} The magistrate's conclusion of law was that the State had proven, beyond reasonable doubt, that A.D. had violated R.C.4511.42 by failing to yield the right of way when making a left turn. A.D. was fined $50 and costs, and was ordered to attend a safe driving course known as the "Drive Alive Program."
 {¶ 16} A.D. objected to the magistrate's decision. In its decision adopting the magistrate's decision as the judgment of the trial court, the trial court analyzed the evidence in the record as follows:
 {¶ 17} "Ms. Everett testified that she was traveling northbound on Route 48 at approximately thirty miles per hour. As she approached the intersection of Spring Valley and Route 48 the light turned yellow. Ms. Everett testified that she was unable to stop because she was too close to the intersection, so she looked to the intersection to determine if it was clear. She then looked to the right so the vehicle on her right side would become aware of her position, and then proceeded through the yellow light. (Tr. at p. 128-129).
 {¶ 18} "Joseph Westendorf, who was traveling behind Ms. Everett on northbound Route 48, approached the intersection to make a right onto Spring Valley when the traffic light turned yellow. (Tr. at p. 77). Mr. Westendorf testified that the motorcycle proceeded through the light at approximately thirty-five miles per hour. (Tr. at p. 78). He further testified that when the motorcycle entered the intersection and proceeded through the light, the light was not red. (Tr. at p. 79). Mr. Westendorf testified that the motorcycle was almost through the intersection before being struck by Ms. [A.D.] (Tr. at p. 98).
 {¶ 19} "Mr. Pawlak who was heading east on Spring Valley stopped at the intersection of Spring Valley and Route 48 when his traffic light turned red. (Tr. at p. 30). Mr. Pawlak witnessed Ms. Everett approach the intersection, and estimated the speed of the motorcycle to be approximately 30 miles per hour. (Tr. at p. 31, 58). He testified that he saw the left front side of Ms. [A.D.]'s vehicle strike Ms. Everett's motorcycle where `your legs fit into the well, stirrups, I don't know what you call them.' (Tr. at p. 60).
 {¶ 20} "The Court finds proof beyond a reasonable doubt that Ms. [A.D.] violated Section 4511.42 of the Ohio Revised Code, when she failed to yield the right of way when making a left hand turn. Ms. Everett was proceeding on Route 48 lawfully, and entered into the intersection lawfully on a yellow light. Ms. Everett was unable to stop at the yellow light because she was too close to the intersection to stop safely. Based on the testimony of Mr. Westendorf and Ms. Everett the Court finds that the light was yellow, thus, Ms. [A.D.] failed to meet her duty to yield the right of way when making a left turn."
 {¶ 21} There is evidence in the record to support all of the findings of the magistrate and of the trial court quoted above, and that evidence was adduced in the State's case-in-chief.
 {¶ 22} From her adjudication of delinquency, A.D. appeals.
 II {¶ 23} A.D.'s sole assignment of error is as follows:
 {¶ 24} "THE CONVICTION [sic] SHOULD BE REVERSED BECAUSE THE CONVICTION WAS CLEARLY, CLEARLY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FURTHER THE STATE DID NOT MAKE A PRIMA FACIE CASE OR MEET ITS BURDEN OF PROOF AND THE COURT ERRED BY NOT DISMISSING THE CASE AFTER THE STATE[']S SO-CALLED CASE IN CHIEF. THEREAFTER THE JUVENILE COURT JUDGE MADE AN ARBITRARY AND PERFUNCTORY FINDING AFTER A REVIEW OF THE MAGISTRATE[']S DECISION AND THE FINDING IS NOT SUPPORTED BY ANY FACTS[,] CASE LAW OR REFERENCE TO ANY PARTICULAR TESTIMONY WHICH SUPPORTS THESE FINDINGS."
 {¶ 25} We would be hard-pressed to determine that the trial court's findings of fact are arbitrary, perfunctory, and without reference to particular testimony, since the trial court made particular reference to pages in the transcript when it cited the specific testimony of particular witnesses in its factual analysis.
 {¶ 26} We understand A.D.'s argument in support of her assignment of error to be that at the conclusion of the State's case-in-chief, and also at the conclusion of the trial, there was insufficient evidence to support the findings, by both the magistrate and the trial court, that Everett was lawfully in the intersection, and therefore still had the right-of-way, when A.D. turned into her path, colliding with her. Of course, A.D. also contends that her adjudication of delinquency is against the manifest weight of the evidence in this respect.
 {¶ 27} Specifically, A.D. contends that the evidence is insufficient to prove, beyond a reasonable doubt, either or both of the following propositions of fact: (1) that Everett entered the intersection on other than a red light; and (2) that Everett was not speeding when she entered, and proceeded through, the intersection. If Everett entered the intersection on a red light, then, so A.D. argues, she did not have the right-of-way, because she entered the intersection unlawfully. Or, if Everett was speeding in the intersection, she was not proceeding lawfully, and therefore did not have the right-of-way. A.D. recognizes, as she must, that if Everett was proceeding lawfully, with the right-of-way, at the time of the collision, then A.D., who was turning left, failed to yield the right-of-way to Everett, as required by R.C. 4511.42(A).
 A. The Red Light Issue {¶ 28} Everett testified that she saw the light controlling northbound traffic on Route 48, the direction in which she was traveling, turn from green to yellow when she was a car length or less away from the stop bar in her lane. As will be seen below, the lowest estimate of her speed at this time is thirty miles per hour. A reasonable inference from Everett's testimony, then, is that the light was still yellow when she actually entered the intersection, although she did not testify that she saw the light at that time.
 {¶ 29} Joseph Westendorf, a neutral witness, was driving his pickup truck in the lane to Everett's right — the curb lane — and was slightly behind her. He was slowing down to make a right turn at the intersection when he saw the light change from green to yellow. He testified that the motorcycle was already in the intersection at that time. He specifically testified that the motorcyclist did not enter the intersection on a red light.
 {¶ 30} David Pawlak, another neutral witness, was waiting at the same intersection. He was driving east on Spring Valley Pike, and was waiting on a red light. There were no cars in front of him in his lane. He saw the motorcycle go into the intersection, and saw A.D.'s car turn into the motorcycle, impacting it. After he heard the sound of the impact, he looked up. His light was still red. Although Centerville police officer Amy Winterhalter testified that there is an overlapping time during the light cycle at this intersection when the lights in all four directions are red, she did not indicate the duration of that overlap. There was no testimony that this intersection has a "Denver Dash" cycle where the lights in all directions are red for a sustained period to permit pedestrians to cross in all directions, and those cycles are not common in this area. We conclude, therefore, that it is a reasonable inference from Pawlak's testimony that the light governing northbound traffic at the intersection had not turned red when Everett entered the intersection. If it had, then the light governing Pawlak's direction would have had to have remained red, after Everett entered the intersection on a red light, from that time until her motorcycle collided with A.D.'s car, and from that time until Pawlak heard the crash, looked up, and saw that his light was still red. This seems unlikely.
 {¶ 31} The only witness whose testimony supports the proposition that Everett entered the intersection on a red light was Collin Flynn, A.D.'s boyfriend, who was with her in her car when the collision occurred. He testified that the southbound light had turned red before Everett entered the intersection, and A.D. called the Centerville Engineer, Norbert Hoffman, to establish that the northbound and southbound lights at that intersection would turn from yellow to red at the same time.
 {¶ 32} We conclude that there is evidence in the record to support a finding, beyond reasonable doubt, that Everett entered the intersection on a yellow light, not a red light. Furthermore, although the evidence on that subject is conflicting, we conclude that the adjudication is not against the manifest weight of the evidence. The testimony of the neutral witnesses corroborated, both directly, in Westendorf's case, and inferentially, in Pawlak's case, Everett's testimony that she entered the intersection on a yellow light. None of this testimony was inherently incredible. The trial court could reasonably have discounted Flynn's contrary testimony, on the basis that he was biased in A.D.'s favor, being her boyfriend.
 B. The Speeding Issue {¶ 33} The evidence on the issue of Everett's speed when entering the intersection was also conflicting. The posted speed limit along Route 48 at this point was 35 miles per hour. Everett testified that she slowed down to about 30 to 32 miles per hour as she was nearing the intersection, to make sure that her way was clear and that it was safe to enter the intersection. As she entered the intersection, she accelerated, "probably no more than three to five miles [an] hour," "just to get me through the intersection a little quicker." Everett acknowledged that in a statement she gave to police after the accident, she had not mentioned that she had slowed down as she was nearing the intersection, and before she accelerated to get through the intersection.
 {¶ 34} She testified that because slowing down while approaching an intersection was a "normal action" for her that she "did every day," she didn't think about that when she was writing her statement.
 {¶ 35} We find nothing inherently incredible about Everett's testimony. It is normal and reasonable for a motorist, especially when in the more vulnerable position represented by a motorcyclist, to slow down upon nearing an intersection when the light has turned yellow, or is likely about to turn yellow, in order to ascertain that other motorists who have a duty to yield the right-of-way are, in fact, yielding the right-of-way, and in order to ascertain that there are no obstructions or other dangers present in the intersection. Once the motorist enters the intersection on a yellow, it is both reasonable and courteous to accelerate back to normal speed, at least, in order to allow oncoming motorists waiting to make a left turn while exposed in the middle of the intersection, like A.D., to more quickly make their left turns and leave their exposed position in the middle of the intersection.
 {¶ 36} Again, Everett's testimony that she was not speeding as she entered the intersection was corroborated by the neutral witnesses. Pawlak testified that the motorcycle was going about 30 miles per hour. Westendorf, who was traveling in the same direction, parallel to, and near, Everett, testified that she was going 35 miles per hour, the same speed as he, before he slowed down to make his right turn. Westendorf testified that Everett had not accelerated to a higher speed by the time she had entered the intersection.
 {¶ 37} The accident reconstructionist, Centerville police officer James Stephenson, while ultimately unable to give an opinion concerning the speed of the motorcycle at the time of the collision, testified that it did not appear, from his observations, that excessive speed on the part of either vehicle was a contributing factor in the collision.
 {¶ 38} Only Flynn, A.D.'s boyfriend, testified that Everett was speeding as she entered the intersection. He testified that she was going about 40 to 45 miles per hour at the time of the collision. Again, Flynn had the obvious potential bias of being A.D.'s boyfriend. Also, he testified that he had only been driving for two years.
 {¶ 39} Even if Everett had been going somewhat over the posted speed limit of 35 miles per hour, it would not have been unlawful for her to do so unless she was traveling "at a speed greater * * * than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions * * *." R.C. 4511.21(A). The only witness to testify on this subject was Centerville police officer Jeffery Williams, who testified that under the conditions at the time and place of the accident, he would not have regarded a speed of 45 miles per hour as having been unreasonable for conditions, although this appears to have been the upper limit of what Williams regarded as not having been unreasonable for conditions. This is also precisely the upper limit of what Everett's speed could be found to have been, taking the upper limit of Flynn's testimony that she was going between 40 and 45 miles per hour.
 {¶ 40} In short, we conclude that there is evidence to support the trial court's finding that Everett entered the intersection lawfully, on a yellow light, without speeding, so that she retained the right-of-way. Furthermore, we conclude that this finding is not against the manifest weight of the evidence. It necessarily follows that the trial court did not err in finding that A.D. violated R.C. 4511.42(A) when she failed to yield the right-of-way to Everett. A.D.'s sole assignment of error is overruled.
 III {¶ 41} A.D.'s sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Brogan and Wolff, JJ. concur.